196 So.2d 235 (1967)
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, Appellant,
v.
PADRICK CHEVROLET COMPANY, Inc., a Corporation, Appellee.
No. 456.
District Court of Appeal of Florida. Fourth District.
March 7, 1967.
Rehearing Denied March 31, 1967.
*236 Joseph V. Niemoeller and Theodore Klein of Knight, Underwood, Peters & Hoeveler, Miami, for appellant.
David L. McCain, of Carlton, McCain, Carlton & Brennan, Fort Pierce, for appellee.
CROSS, Judge.
Defendant insurer, Commercial Union Insurance Company of New York, appeals a final judgment entered in favor of the insured, Padrick Chevrolet Company, Inc., a corporation, tried before the court without a jury.
Plaintiff, a Chevrolet automobile dealer, filed suit against its insurer company for loss of an automobile destroyed by fire.
The plaintiff through its president, Padrick, in response to a telephone call went to the home of one Douglas Mullins to negotiate the sale of a pick-up truck and a Monza Corvair.
Mullins desired to trade in a Pontiac he owned on the two above named vehicles so Padrick drove the Pontiac back to the company to have it appraised and inspected. During the inspection a small amount of smoke was noticed under the hood, inspected by the mechanic and later returned to Mullins' garage where it was parked with the keys left in it.
A new pick-up truck was also delivered at the same time to Mullins where it could be test-driven. After being test-driven it was parked at Mullins' office which was approximately 100 yards from Mullins' home and left there while Mullins and Padrick discussed prices of both the Chevrolet pick-up and the Monza, as well as a trade-in allowance for the Pontiac. They agreed on a cash difference price without financing. There were penciled notes setting forth the charges for the truck and the Monza with credit for the Pontiac. These notes evidenced *237 the transaction, however, they were not signed by either party.
The parties considered the transaction closed, except to complete the paper work, effect tag transfer and select the color of the Monza which was to be chosen by Mullins' daughter, and had begun a discussion on hunting when they were informed the Pontiac was on fire. Padrick later returned to town and informed the agent of the defendant insurer company of the loss.
Transfer of actual paper title on all vehicles involved was made at a later date.
The company admitted the issuance of an insurance policy to the plaintiff but denied coverage of the loss of the automobile in question on the grounds that plaintiff neither owned nor had an insurable interest in it and that no contractual relationship existed between Padrick and Mullins.
The trial court stated in its opinion:
"It is clear, and the Court so finds, that Mr. Padrick, as agent for the Plaintiff, and Mr. Mullins had reached an agreement prior to the fire loss of the Pontiac and nothing remained to be done but to process the paper work, make payment of the cash difference, and make final determination of the color of the Monza which was destined for Mr. Mullins' daughter. It is also clear that the policy covered the burned Pontiac if the plaintiff Chevrolet agency had an insurable interest in it at the time of the loss. Accordingly, the sole question is whether the agreement was valid at the time of the loss under the Florida statute of frauds, § 725.02, Fla.Statutes, 1963. This question depends in turn upon whether `the buyer accepted the goods (or part of them) so sold and actually received the same.'
"The Court finds that each party had accepted the vehicle of the other in that the Plaintiff had accepted the Pontiac and Mullins had accepted the pick-up. The Court further finds that the Plaintiff and Mr. Mullins each actually received these two vehicles. The keys were in each and nothing more needed to be done with regard to acceptance or receipt of them, in view of the agreement of the parties."
We affirm the judgment of the lower court. However, we reach our affirmance on factors decisively different than those expressed in the lower court's opinion.
The record abounds with relationships concerning the Statute of Frauds. Section 725.02, F.S.A. (1963).
When considering the question of the application of the Statute of Frauds in determining the issues in this case we find it necessary to simplify those issues by eliminating the defendant insurance company from consideration in connection with the part which the Statute of Frauds might have in determining the question. The insurance company is not a party to the oral contract nor a privity thereto, if it is anything, it is a third party (stranger) to this contract. It is a well established rule that only a party to a contract or the successor of a party or one to whom the rights of a party are transferred or contracted to be transferred can assert that the contract, because of non-compliance with the Statute, has not the same effect as if the requirements were satisfied. Restatement of the Law, Contracts, § 218. The defense of the Statute of Frauds cannot be claimed by one who is not a party or privity to the oral contract and is not sought to be charged personally on such contract. 49 Am.Jur., Statute of Frauds, § 589, page 896. Florida law is in conformity. See Brownson v. Hannah, 1927, 93 Fla. 223, 111 So. 731, 51 A.L.R. 976. The record indicates that neither party to the oral contract wishes to claim the benefits of the Statute of Frauds, quite the contrary testimony of both Padrick and Mullins substantiates their willingness and intent to perform their agreement. Therefore any question concerning the application of the Statute of Frauds to this case need not be considered.
The question of whether a valid oral contract existed between Padrick and *238 Mullins prior to the destruction of the Pontiac must be answered in the affirmative. The facts support this conclusion; Padrick and Mullins treated the transaction as a valid contract, both testifying that it was their intention to be bound by the terms of their oral agreement and both indicated that in previous dealings between them months had occasionally passed without signing any paper evidencing a written contract. Yet both considered themselves to be bound in their prior dealings as they did in the present agreement. A definite intention existed on the part of Mullins and on the part of Padrick to make an immediate transfer of the beneficial ownership of the pick-up truck to Mullins and nothing appears to suggest a contrary intention. This intention of the parties coupled with the actual delivery of the goods and a tender and acceptance of payment, i.e., the Pontiac, leaves us with no doubt that a sale had been completed for the purpose of this case before the Pontiac was destroyed by fire. Fletcher Motor Sales, Inc. v. Cooney, 1946, 158 Fla. 223, 27 So.2d 289; see 46 Am.Jur. Sales, §§ 413, 433.
Prior to the time of the fire and by virtue of the completed sale between Padrick and Mullins, Padrick Chevrolet was the owner of the Pontiac and therefore would benefit from its existence and suffer loss from its damage or destruction. The definition of an insurable interest is found in § 627.01041, F.S.A. It is obvious that the owner of property fits the description of what is considered the measure of an insurable interest.
Affirmed.
WALDEN, C.J., concurs.
WHITE, JOSEPH S., Associate Judge, concurs specially.
WHITE, JOSEPH S., Associate Judge (concurring specially).
I concur in the affirmance upon authority of Reed v. American Ins. Co. of Newark, N.J., 1937, 128 Fla. 549, 175 So. 224; McDowell v. Ritter, 1943, 153 Fla. 50, 13 So.2d 612; Grossman v. Levy's, Fla. 1955, 81 So.2d 752. It is my view that the agreement in question was infirm because of the Statute of Frauds. See Charlotte Harbor & Northern Ry. Co. v. Burwell, 1908, 56 Fla. 217, 48 So. 213; United Hardware-Furniture Co. v. Blue, 1910, 59 Fla. 419, 52 So. 364, 35 L.R.A.,N.S., 1038. Nevertheless, the parties fully complied with and performed the agreement by the exchange of the automobiles and by payment by the purchaser to the dealer of the full cash difference of $3100.00 as agreed. The performance "relates back to the inception of the obligation contemplated by the original agreement." Reed v. American Insurance Co. of Newark, N.J., supra.