606 So.2d 393 (1992)
McKINNEY-GREEN, INC., Appellant,
v.
Calvin C. DAVIS, Appellee.
No. 91-2008.
District Court of Appeal of Florida, First District.
September 2, 1992.
*394 Robert M. Ervin and Robert M. Ervin, Jr., of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for appellant.
Kenneth S. Davis, Gainesville, for appellee.
SHIVERS, Judge.
McKinney-Green, Inc. ("M-G"), appealed from a final judgment in favor of Calvin C. Davis ("Davis"), the plaintiff below in an action for breach of contract and tortious interference with an advantageous business relationship. Following a non-jury trial, the trial court awarded Davis $10,000 in compensatory damages. At several stages of the proceedings below, M-G moved to terminate the litigation, alleging 1) Davis' lack of standing, 2) Davis' failure to join indispensable parties, 3) Davis' failure to allege all the elements of tortious interference, and 4) the statute of frauds. The sufficiency of the allegations in the fourth amended complaint was disputed at trial, and appellant alleges error in the trial court's denial of the motion to dismiss that complaint, as well as M-G's motions for dismissal, following the case-in-chief, and for rehearing. We reverse, holding that the trial court erred, as a matter of law, in denying M-G's motion to dismiss the fourth amended complaint as to both counts.

MOTION TO DISMISS
In reviewing the trial court's order denying appellant's motion to dismiss, we must determine whether the allegations, from the four corners of the complaint, sufficiently state one or more claims for relief. Green v. Florida East Coast Railway Co., 141 So.2d 326, 327 (Fla. 1st DCA 1962); Padovano, Fla.App.Prac. § 5.4B (1992 pocket part). We are obliged to accept all well-pled allegations of the complaint as true. Rishel v. Eastern Airlines, Inc., 466 So.2d 1136, 1138 (Fla. 3d DCA 1985). With that in mind, we summarize the facts as alleged.
Davis and his brother, G.M. Davis, Jr. ("G.M."), who is now deceased, orally agreed to develop the Oaks of Kanapaha subdivision in Alachua County, Florida. Davis and his brother each owned 50 per cent of the stock of Oaks of Kanapaha, Inc., the corporation that in 1984 owned the land parcel from which lots were divided and sold and on which homes were to be built. Appellant M-G was engaged in the business of originating loans and acting as a mortgage broker. A. Frank Green, the president and chief executive officer of M-G, was a licensed mortgage broker at all times pertinent. In February 1984, M-G, acting through Green, orally agreed with Davis and his brother to make a construction loan in March 1984 to Oaks of Kanapaha, Inc., to build houses on six subdivision lots during 1984. Under the agreement, M-G authorized Davis and Oaks of Kanapaha, Inc., to commence construction prior to the date of closing on the construction loan. Davis alleged the terms of the loan were memorialized on various documents prepared by counsel for M-G, including an unsigned proposed mortgage dated March 21, 1984, and filed in evidence as Plaintiff's Exhibit # 5. Immediately prior to closing on the construction loan, Green demanded that Davis arrange to transfer to M-G a vacant building located in another subdivision, owned by Tower Village, Inc., to satisfy a debt owed to M-G by another principal in Tower Village, Inc. Davis was the secretary and a 50 per cent stockholder in Tower Village, Inc.

BREACH OF CONTRACT (COUNT ONE)
Count One of the fourth amended complaint is an action for breach of contract. *395 The allegations pertinent thereto are as follows: 1) The breached oral agreement was the one including M-G, acting through Green as its corporate officer and mortgage broker; Davis, and his brother, whereunder M-G was to make the construction loan to Oaks of Kanapaha, Inc. 2) Davis and Oaks of Kanapaha, Inc., did all that was required of them under the agreement for M-G to make the construction loan. 3) M-G delivered to Davis a set of documents for the closing, showing Oaks of Kanapaha, Inc., as the mortgagor, to which Davis agreed in all material respects. 4) Just prior to closing the loan package, Green and M-G breached the agreement, and refused to make the construction loan to Oaks of Kanapaha, Inc., but offered instead to make the loan to G.M. Davis, Inc., in which Davis had no interest and his brother was sole stockholder. 5) Davis was a beneficiary of the agreement to make the loan and was damaged by M-G and Green's breach of that agreement. Count One was dismissed against Green but not against M-G.
M-G moved to dismiss Count One on two grounds: 1) that the fourth amended complaint was substantially identical to the third, which had been dismissed without further explanation; and 2) "the plaintiff [Davis] either has failed to incorporate in the fourth amended complaint and allege with precision the terms of the alleged contract or, if he has done so, he is not a party to the contract alleged."
Davis asserted the newer complaint was rearranged, with substantial changes in text. The renumbered tenth paragraph of the fourth amended complaint was revised so that it alleged the name of the officer, Green, through whom M-G acted in making the oral agreement with Davis and his brother; and it added the year 1984, in which the houses were to be built. It alleged the terms of the construction loan were memorialized on "various documents" not otherwise described, other than an attached unexecuted "proposed mortgage."
M-G correctly argued that naming Green as the person through whom M-G acted was mere surplusage because it is axiomatic that corporations can act only through natural persons. Alleging the year apparently was intended to avoid the statute of frauds. The allegation that the terms of the construction loan agreement were memorialized on "various documents," without more, did not aid in the precise allegation of the terms of the contract. See Roy L. Willard, Inc. v. Miller, 150 Fla. 458, 8 So.2d 489, 492 (1942) (on reh'g) (plaintiff must allege elements of contract with precision so that person against whom redress is sought may properly defend). If the attached unexecuted "proposed mortgage" and "mortgage note" memorialized the agreement, then Davis is not a party. Nowhere in the attached documents is Davis mentioned as a party, and in fact, the mortgage and mortgage note expressly state the agreement is between Oaks of Kanapaha, Inc., as mortgagor, and M-G, as mortgagee. Davis' name, misspelled "Kelvin C. Davis," appears below the signature line, but only as the corporate president, not as a party individually. Paragraph 14 of the fourth amended complaint acknowledges that the proposed mortgage shows Oaks of Kanapaha, Inc., as mortgagor. Although as a corporation, Oaks of Kanapaha, Inc., could act only through its officer in negotiating a proposed mortgage, Davis' status as the president of the corporation did not make him a party individually. Thus, the proposed mortgage is not a specific or precise allegation of the terms of the oral agreement among Davis, his brother, and M-G. Miller, 8 So.2d at 492.
Neither have the other "various documents" alleged in Paragraph 10 of the complaint been identified and alleged in precise terms. We find merit in appellant's argument before the trial court that the revisions in the fourth amended complaint are not material and do not state a cause of action. The allegations of Count One either failed to meet the Miller requirements for preciseness and sufficiency, or otherwise showed, through the attached "proposed mortgage" and mortgage note, an agreement in which M-G and Oaks of Kanapaha, Inc., but not Davis individually, were parties. See White v. Exchange Corp., 167 So.2d 324, 326 (Fla. 3d DCA *396 1964) (person not a party to, or in privity with, a contract lacks the right to sue for its breach).
Davis alleged alternatively that he was a beneficiary of the agreement. However, he did not allege facts showing him to be an intended beneficiary of the proposed loan from M-G to Oaks of Kanapaha, Inc. In defending the substantially identical Count One of the third amended complaint, Davis had asserted he was a shareholder of Oaks of Kanapaha, Inc., and a proposed guarantor of the construction loan. However, Davis failed to show how being a guarantor constitutes a benefit, under these facts. Although Davis' being a 50 per cent stockholder in Oaks of Kanapaha, Inc., may make him an incidental or consequential third-party beneficiary, we held in Legare v. Music & Worth Constr. Co., Inc., 486 So.2d 1359 (Fla. 1st DCA 1986), that the right of a third-party beneficiary of a contract to sue for its enforcement is limited to those situations "where the contract provisions clearly establish the parties' intent to create a right primarily and directly benefiting the third party." Id. at 1362. The complaint and the attached proposed mortgage do not evince such a clear intent to benefit Davis primarily and directly as a third party. A merely incidental or consequential third-party beneficiary of a contract may not sue for its enforcement. American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930); Genet Co. v. Anheuser-Busch, Inc., 498 So.2d 683, 685 (Fla. 3d DCA 1986); Security Mut. Cas. Co. v. Pacura, 402 So.2d 1266, 1267 (Fla. 3d DCA 1981); Muravchick v. United Bonding Ins. Co., 242 So.2d 179, 180 (Fla. 3d DCA 1970).
If this were deemed an action to redress injuries to Oaks of Kanapaha, Inc., resulting from appellant's breach of the agreement to make a construction loan to the corporation, Davis would be subject to the general rule that such an action cannot be maintained by a stockholder in his own name or the corporation's name, but must be brought by the corporation. See James Talcott, Inc. v. McDowell, 148 So.2d 36 (Fla. 3d DCA 1962). Although "under certain circumstances a stockholder may bring a stockholder's derivative action which is an action in which a stockholder seeks to sustain in his own name a right of action existing in the corporation," id. at 37, we find the allegations here are insufficient to state a stockholder's derivative action. Id. at 37-38; Alario v. Miller, 354 So.2d 925, 926 (Fla. 2d DCA 1978) (stockholder does not have cause of action as individual, if damages are only indirectly sustained by stockholder as a result of injury to corporation). For the reasons stated above, we find no cause of action stated as to Count One for breach of contract, under any theory proffered by Davis individually.
Any damage that might have resulted to Davis from the failure to obtain the construction loan for Oaks of Kanapaha, Inc., likewise was incurred by his brother, as an equal shareholder in the corporation. We find no showing of a separate and distinct injury to Davis resulting from the breach, nor do the pleadings demonstrate an intent by the parties to create a direct and primary benefit to Davis individually as a third party. Legare. The primary injury was to Oaks of Kanapaha, Inc., for which the construction loan was intended. Thus, the allegations are insufficient to support an individual action by Davis.
In Florida Gas Co. v. Arkla Air Conditioning Co., 260 So.2d 220 (Fla. 1st DCA 1972), an appeal from a final order dismissing a third amended third-party complaint, we held that under even the most liberal construction of the rules of procedure, ample opportunity was proffered to the appellant to state a cause of action. When leave to amend a dismissed complaint has been granted, failure to do so will result in dismissal. Dewitt v. Rossi, 559 So.2d 659 (5th DCA), rev. den., 574 So.2d 140 (Fla. 1990); Reynolds v. Deep South Sports, Inc., 211 So.2d 37 (Fla. 2d DCA 1968). We hold that the the trial court erred, as a matter of law, in denying the motion to dismiss as to Count One.

COUNT TWO (TORTIOUS INTERFERENCE)
Count Two is an action for tortious interference with an advantageous business *397 relationship, in support of which these allegations were made: 1) To compel Davis to meet Green's demand to transfer to M-G a vacant lot owned by Tower Village, Inc., Green told Davis that if he failed to comply, Green would never make another loan to Davis or to any organization in which he had an interest. 2) When Davis protested that the requested transfer would involve obtaining a release from the mortgage on the subdivision lots, and would deprive him of his interest in the corporate assets without compensation, Green said "You simply don't want to do business with me." 3) Subsequently, Green caused M-G to terminate the construction loan agreement and to cancel the closing. 4) When Davis' brother, G.M. Davis, Jr., went to Green in an effort to resolve the matter, Green informed him that Green and M-G would make the loan only to G.M. personally or to G.M. Davis, Inc. 5) Because Oaks of Kanapaha, Inc., had begun construction and had ordered custom-made materials, Davis was forced to agree for Oaks of Kanapaha, Inc., to transfer lots to his brother's corporation. 6) M-G and Green made the loans to G.M. Davis, Inc. 7) Green knew Davis and his brother had an agreement to develop Oaks of Kanapaha, Inc., together as equal corporate owners who were both liable for its obligations. 8) Green knew Davis and his brother had agreed to obtain a construction loan to build six houses in 1984 in Oaks of Kanapaha. 9) Green's and M-G's actions were unjustified and were maliciously intended to cause a breach of Davis' agreement with his brother. 10) By virtue of that tortious interference with the agreement between Davis and his brother, Davis was damaged.
Paragraph 24 of the complaint alleged Green knew Davis and his brother had a contract to develop the Oaks of Kanapaha subdivision and were equal owners of Oaks of Kanapaha, Inc., and both liable for the obligations thereof. Green also knew Davis and his brother had agreed to obtain a construction loan to build six houses in 1984 on their subdivision lots. Paragraph 25 alleged Green's and M-G's actions were maliciously intended to cause a breach of Davis' contract with his brother. In support of the motion to dismiss, M-G argued first that Davis had alleged M-G was a party to the contractual or advantageous business relationship with which M-G interfered. We believe Davis sufficiently alleged that the oral agreement with which M-G interfered was the one involving just Davis and his brother.
Second, M-G asserted that the oral agreement with which it allegedly interfered was not an enforceable contract under the statute of frauds, section 725.01, Florida Statutes (1991). Khawly v. Reboul, 488 So.2d 856, 857 n. 1 (Fla. 3d DCA 1986); Ostman v. Lawn, 305 So.2d 871, 872 (Fla. 3d DCA 1974). An essential element for the establishment of a tortious interference with a contractual relationship is the existence of a contract. Florida Teleph. Corp. v. Essig, 468 So.2d 543, 544 (Fla. 5th DCA 1985). However, M-G's argument fails because M-G was not a party to or beneficiary of the interfered-with agreement, and nothing in the allegations indicates the parties to that agreement were unwilling to perform. Commercial Union Ins. Co. of New York v. Padrick Chevrolet Co., Inc., 196 So.2d 235, cert. den., 201 So.2d 556 (Fla. 1967); City of Gainesville v. GNV Investments, Inc., 413 So.2d 770, 772 (Fla. 1st DCA 1982); Jones v. Howland, 369 So.2d 438 (Fla. 3d DCA 1979).
The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other. Dade Enterprises, Inc. v. Wometco Theatres, Inc., 119 Fla. 70, 73, 160 So. 209, 210 (1935); Steffan v. Zernes, 124 So.2d 495, 498 (Fla. 1st DCA 1960). The Fifth District Court described the cause of action as follows:
The elements of a cause of action for tortious interference with a contractual relationship are:
(1) The existence of a contract,
(2) The defendant's knowledge of the contract,

*398 (3) The defendant's intentional procurement of the contract's breach,
(4) Absence of any justification or privilege,
(5) Damages resulting from the breach.
Essig, 468 So.2d at 544.
Under Dade Enterprises and Steffan, an action for tortious interference requires a showing of malicious interference by a non-contracting party with an agreement between other parties, whereby one of the parties is induced to breach the contract, to the injury of the other contracting party. Davis did not specifically allege that M-G, the non-contracting party, induced the other contracting party, G.M. Davis, to breach the agreement with appellee Davis to develop the Oaks of Kanapaha subdivision. The common allegations in the complaint assert that just prior to, and as a condition of, closing on the construction loan, Green presented new demands involving Davis' transfer of a vacant lot to M-G. When Davis refused to comply with Green's demands, M-G and Green refused to conclude the construction loan transaction, but offered instead to make the loan to G.M. Davis, Inc. It is not alleged that Davis' brother was induced by M-G or Green to breach the agreement with Davis. In fact, Paragraph 23 of the complaint indicates the demands made by M-G induced appellee Davis himself to act in contravention of the agreement. The allegations are as follows:
23. For the reason that Oaks of Kanapaha, Inc. had commenced construction and had ordered custom made materials, Davis was forced to agree for Oaks of Kanapaha, Inc. to transfer lots to G.M. Davis, Inc. and Green and M-G made the loans to G.M. Davis, Inc. [emph. added]
Count Two of the fourth amended complaint fails to state a cause of action for tortious interference. Accordingly, we find the trial court erred when it failed to grant M-G's motion to dismiss.
REVERSED.
MINER, J., concurs.
ALLEN, J., dissents, with an opinion.
ALLEN, Judge, dissenting.
The complaint herein, which includes attached exhibits, alleges the following: The appellee, Calvin Davis, and his brother, G.M. Davis, contracted with one another to jointly develop a subdivision known as Oaks of Kanapaha. In furtherance of their contract, they purchased and subdivided land and set up a corporation named Oaks of Kanapaha, Inc., which held title to the subdivision property. Desiring to construct houses for resale on six of the subdivision lots, the Davis brothers entered into an oral contract with the appellant. Under the contract, the appellant agreed to provide a loan to Oaks of Kanapaha, Inc., in the amount of $210,900, with the loan to be closed on March 21, 1984. It was agreed that Oaks of Kanapaha, Inc., would give the appellant a note in the amount of the loan, with the note being personally guaranteed by each of the Davis brothers and their spouses and secured by a mortgage on the six lots to be improved. The appellant breached this contract by failing to make the agreed loan. The appellant's breach of the contract prevented the appellee from participating in the development of the subdivision, and, as a result, he lost profits he otherwise would have made from the business venture.
In separate counts, the appellee set forth two theories for recovery of his lost profits. The first theory was that the appellant had breached its contract with the Davis brothers to make the loan. The second theory was that the appellant's refusal to loan the money as agreed was a tortious interference with a business relationship, the contract between the Davis brothers to develop the subdivision. Under each theory, the lost profits flowed directly from the appellant's wrongful refusal to make the loan. In my view, the appellant stated a cause of action under each theory.
The majority hold that the trial court should have dismissed the count asserting breach of the contract between the Davis brothers and the appellant because the complaint and the attached exhibits failed to precisely and sufficiently allege the terms of the contract and because the documents *399 attached to the complaint revealed an agreement to which the appellee was not a party. The complaint, together with the attachments, went far beyond the specificity required by modern pleading practices in suing upon a contract. It does not matter that the complaint referred to "various documents," because other allegations of the complaint, together with the attachments, provided sufficient specificity as to the terms of the contract. Accordingly, I must respectfully disagree with the majority's conclusion that the complaint was deficient in this regard. The majority's indication that the appellee's complaint was also deficient because the mortgage and note attached to the complaint did not reflect an agreement between the appellant and the appellee misses the point. The appellee did not sue upon the note or mortgage. As the appellee asserted in paragraph 10 of his complaint, the contract sued upon was an oral agreement by the appellant with the Davis brothers to loan money to Oaks of Kanapaha, Inc., and, as that paragraph of the complaint further indicates, the copies of the proposed note and mortgage were attached simply to reveal the "terms of the loan."
As to the count alleging tortious interference with a business relationship, in Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla. 1985), the supreme court held the elements of an action upon this theory to be as follows: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Because these elements do not require proof as to which of the parties to a business relationship was first induced to act in contravention of the relationship, we should not require such by our opinion herein. Because the appellee's complaint alleged the presence of each required element, I respectfully disagree with the majority's holding that the complaint failed to state a cause of action for tortious interference with a business relationship.