733 So.2d 1124 (1999)
ENRIQUILLO EXPORT & IMPORT, INC., Appellant,
v.
M.B.R. INDUSTRIES, INC., Appellee.
No. 98-0134.
District Court of Appeal of Florida, Fourth District.
June 9, 1999.
*1125 Alex P. Rosenthal and Peter J. Frommer of Reimer & Rosenthal LLP, Hollywood, for appellant.
Richard C. Wolfe and Teri L. Di Giulian of Bedzow, Korn, Brown, Wolfe & Lipton, P.A., Aventura, for appellee.
FARMER, J.
This appeal brings a holding that a debtor complied with a general, unqualified obligation to make payment when it merely placed a check in the mail. We reverse.
Enriquillo originally sued MBR over defective goods for which it had already paid MBR more than $68,000. The parties settled the suit with a written agreement providing as follows:
"1. MBR shall pay to Enriquillo the principal sum of Thirty Thousand dollars to be paid as follows:
a. $10,000 on or before March 1, 1997;
b. $5,000 on or before April 1, 1997;
c. $5,000 on or before May 1, 1997;
d. $5,000 on or before June 1, 1997;
e. $5,000 on or before July 1, 1997.
"2. In the event payment is not timely made as ... provided in ¶ 1 above on any installment thereof, and said default is not corrected within 5 days after receipt of written notice thereof to MBR's counsel, then in that event Enriquillo shall be entitled to a final judgment against MBR computed on the following formula:
$50,000 plus interest calculated at the rate of 12% from the date of this Settlement Stipulation to the date of default minus all sums paid by MBR as ... provided in ¶ 1."
The agreement conspicuously added that:
"It is expressly understood by MBR that time is of the essence in the performance of all terms and conditions of this Settlement Agreement."
There were substantial incentives to MBR in this settlement. For one thing, liability was fixed at $30,000 rather than $68,000 ifbut only ifMBR made timely payment under the agreed schedule. Also if the installments were timely made there was no interest due.
And these provisions were no accident. In discussing a proposed settlement, Enriquillo's counsel wrote MBR's lawyer in response to a bare offer of $30,000 that:
"It is my experience that a settlement such as this has no real value unless your client agrees to pay a penalty in the event of a default under the terms of *1126 the Settlement Stipulation. Accordingly, my client will not consider a payment plan unless the Settlement Stipulation contains a default provision which entitles us to interest at 12% from the date of settlement, plus a liquidated judgment in the amount of $50,000, less any payments made under the settlement."
Consequently the final agreement contained the payment provision quoted above.
MBR defaulted in the July 1st installment, and its default was not by a mere day or two. When payment was still not forthcoming nearly two months after the payment was due, the creditor delivered a notice on August 25th to MBR's counsel. Again payment was not received, so Enriquillo filed the motion to enforce on September 9th, now more than 70 days after the payment was originally due. It was only after that filing on September 9th that MBR finally produced a check that MBR had placed in the mail on August 28th; the check had been damaged and delayed in the postal system. Hence dilatory and negligent MBR was allowed to prevail over fault-free Enriquillo upon a holding that a check mailed 58 days after it was due and which never did reach the creditor was nevertheless deemed full performance of the duty of payment in the settlement provisions quoted above.
MBR argues that the term pay is ambiguous and that it lends itself to more than one construction. We disagree. There is only one meaning of the general term pay. In 1936 our supreme court held that "[p]ayment contemplates manual delivery of the sum due or the placing of it within the control of the payee if and when contingencies to its payment are met." Waits v. Orange Creek Turpentine Corp., 123 Fla. 31, 166 So. 449, 451 (1936); see also 39 Fla.Jur.2d, "Payment and Tender," § 1 (payment commonly defined as "delivery and acceptance of money or its equivalent in discharge of an obligation"); 70 C.J.S., "Payment," § 2 (payment defined as the "discharge in money of a sum due"); and § 10 ("Generally a creditor is entitled to payment in money, and in the absence of an agreement otherwise providing, or the consent of the creditor to receive some other medium, payment may be made only in money.").
Moreover, the tender of a mere check does not constitute payment of cash or its equivalent and it thus makes such a tender of payment merely conditional. Neuman v. Ferris, 432 So.2d 641, 643 (Fla. 4th DCA 1983); see Cowen v. Indianapolis Life Ins. Co., 116 Fla. 814, 157 So. 180, 182 (1934) ("We are not unmindful of the rule that in the absence of an agreement to the contrary, the acceptance by a creditor of a check, whether it be a cashier's check, certified check, or the debtor's check, or the check of a third person, and the surrender of the evidence of indebtedness and the giving of a receipt do not constitute payment per se."); see also Arthur Linton Corbin, 3A Corbin on Contracts, § 758 at 511 ("Unless the contract clearly specifies some other kind of money, the money that exact performance requires is the kind of money that has come to be called `legal tender.' ... A personal check on a bank is certainly not such `legal tender'."); 70 C.J.S., "Payment," § 18 ("The delivery to, or acceptance by, the creditor of his debtor's check is not payment, in the absence of any agreement or consent to receive it as payment.").
As these authorities demonstrate, there is nothing in the term that lends itself to supposing that good payment is made if a mere check is mailed on or before the due date, regardless of whether it ever reaches the creditor. We of course distinguish those agreements in which payment is specifically defined as placing a check in the mail. In that circumstance the creditor has allowed the debtor to comply with its obligation of payment by merely mailing the check. Where, as in this case, the creditor has made no such agreement, and the debtor's obligation is only an undifferentiated agreement to pay, simply *1127 placing a check in the mail is an insufficient tender of performance. In the absence of an express agreement otherwise, the debtor owes his creditor nothing less than the unconditional delivery of money on or before the last day specified for payment.
There is still another difficulty with MBR's attempted performance in this case: namely the provision in the parties' agreement that "time is of the essence." As the settlement discussions quoted above demonstrate, the "time is of the essence provision" was specifically intended to allow the creditor to have a judgment for $50,000 (less a credit for payments made under the settlement agreement) if the debtor should fail to make any installment on or before the date when it was due. See Garcia v. Alfonso, 490 So.2d 130 (Fla. 3d DCA 1986) (buyer not entitled to specific performance of contract for sale of realty where contract required buyer to obtain firm commitment for mortgage within 30 days of contracting; trial court properly found from surrounding circumstances that "time is of the essence" clause was intended to give seller immediate right to cancel contract if buyer failed to obtain commitment within 30 days); see also Realty Securities Corp. v. Johnson, 93 Fla. 46, 111 So. 532, 534 (1927) ("It is now thoroughly established that parties have the right to make time of the essence of the contract if they so desire, and if it clearly and unequivocally appears from the contract, by means of some express stipulation, that time shall be essential, this expressed intention of the parties will be recognized in equity as well as at law, and the time of completion, or of performance, or of complying with the terms, will be regarded as of the essence of the contract."). Here, the debtor's argument would have us ignore the time of the essence provision entirely.
Ultimately, debtor's argument simply cannot be squared with these traditional understandings of the general, undifferentiated duty to pay on or before a day certain. The failure to specify in the settlement agreement that payment could be done by mail and by check does not yield any ambiguity about the mode of payment. Compare Neuman v. Ferris, 432 So.2d 641 (Fla. 4th DCA 1983) (after execution of note, payee's lawyer wrote payor and instructed that payments were to be made by check placed in the mail on the first day of the month). When commercial parties agree that the debtor shall pay the creditor on or before a specific date, time being of the essence, they mean exactly that. The debtor shall deliver money to the creditor on or before the due date. There is almost always no such thing as "substantial performance" of payment between commercial parties when the duty is simply the general one to pay. Payment is either made in the amount and on the date due, or it is not.[1]
We reverse and direct judgment for the creditor in the amount of $50,000, less the payments actually made before default, together with interest.
DELL, J., concurs.
SHAHOOD, J., dissents with opinion.
SHAHOOD, J., dissenting
I would affirm the trial court's order. In this case, the settlement agreement lent itself to more than one construction and was therefore sufficiently ambiguous to require judicial interpretation. Therefore, as this court stated in Royal Oak Landing Homeowner's Ass'n v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993):
When construing ambiguous language, courts will approve that construction which comports with logic and reason. Wright & Seaton, Inc. v. Prescott, 420 *1128 So.2d 623 (Fla. 4th DCA 1982). "[T]he court should arrive at an interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties." Id. at 629 (citing Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788, 791 (Fla. 2d DCA 1978)).
In this case logic and reason dictate that this court uphold the ruling of the trial court.
NOTES
[1] Although not an issue in this case, we note that in this time of automated funds transfer, it is no longer so difficult to tender payment by cash or its equivalent as it once might have been. Now it is simply a matter of transferring digits in computer banking networks, as easy as dialing a telephone or otherwise accessing a financial institution's network.