RAMIREZ, J.
Strategic Resources Group, Inc. appeals a final order granting appellee Knighb-Ridder, Inc.’s, d/b/a The Miami Herald Publishing Company, motion for summary judgment and denying its own motion for summary judgment. Because we conclude that KnighU-Ridder substantially performed its obligations under the parties’ advertising contract, we affirm.
In 1992, Knight-Ridder entered into an advertisement contract with Brighton Homes Development. The contract incorporated rate cards into the agreement. Section 4 of the incorporated rate cards, entitled “General Rate Policy, Advertising Terms and Conditions,” provided that Brighton agreed to “designate the width in columns and exact depth in inches [of the advertisement to be published]” and Knight-Ridder “agreed to publish and bill the ad for the exact space published.” Section 4 of the rate card, in the subsection titled “Herald’s Rights Regarding Copy,” also established KhighWRidder’s reservation of the right to “revise, alter or reject any advertisement for any reason but no change in advertising copy will be made without [the customer’s] prior consent.” Furthermore, under the subsection entitled “Liability of Publisher,” Knight-Ridder disclaimed liability for any “general, special or consequential damages” resulting from publishing errors. This subsection also stated that KnighNRidder would only give full credit when “the error completely destroyed] the effectiveness of the ad, and partial credit when the effectiveness of the ad [was] only reduced.” The advertisement contract contained identical language. No one has asserted or proved that the effectiveness of the advertisement was reduced or destroyed.
*848 In 1998, Strategic and Brighton entered into a Newspaper Advertising Billing Verification Services Agreement. Under this service agreement, Brighton assigned its rights to Strategic, and Strategic agreed to review the advertisements and the contract to determine if Brighton had been overcharged. In late 1998, Brighton complained for the first time to Knight-Ridder about overcharges.
Strategic filed a one count complaint against the Miami Herald and Knight-Ridder. It claimed $75,000 in overcharges between 1994 and 1996 and $8,681.97 in 1997. Knight-Ridder raised various affirmative defenses including waiver, estoppel and substantial performance. Knight — Rid-der admitted having reduced all black and white page images between the relevant time period of this lawsuit, 1994 through 1997. The trial court found that it was standard practice in the newspaper publishing industry to reduce image size on a page. The images in the Miami Herald were all reduced to meet press/production requirements to ensure that a quality newspaper was printed. The percentage of reduction was approximately 3.83%, a reduction that was only noticeable if measured with a ruler.
Knight-Ridder continues to reduce the black and white page images and Brighton continues to pay the same price for the advertisements it claims is an overcharge. Brighton justifies its continued payments by arguing that the Miami Herald is the only major newspaper in town and that, as a home developer, it needs to advertise in the newspaper. Brighton, however, does not complain about overcharges incurred after it discovered the image size reduction.
This is a clear case for the application of the doctrine of substantial performance. “Substantial performance is performance ‘nearly equivalent to what was bargained for.’ ” Pullam v. Hercules Inc., 711 So.2d 72, 75 (Fla. 1st DCA 1998).
Substantial performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor’s right to recover whatever damages may have been occasioned him by the promisee’s failure to render full performance.
Ocean Ridge Dev. Corp. v. Quality Plastering, Inc., 247 So.2d 72, 75 (Fla. 4th DCA 1971). For six years, Knight-Ridder ran the advertisements without any complaint from Brighton. Brighton never requested tear sheets or advertising proofs before publication, nor did it measure the advertisements after publication. The size reduction was not easily discernible, even in a side-by-side comparison. Brighton thus received the benefit of its bargain. Even after discovering the reduction, it continued its business relationship with Knight-Ridder, using the same advertisements under the same terms and conditions.
Strategic makes two arguments as to why the doctrine of substantial performance is not applicable. First, it asserts that the doctrine does not apply to the payment of money, citing to Rose v. Ditto, 804 So.2d 351, 353 (Fla. 4th DCA 2001) (“There is almost always no such thing as ‘substantial performance’ of payment between commercial parties when the duty is simply the general one to pay.”) and Enriquillo Export & Import, Inc. v. M.B.R. Indus., Inc., 733 So.2d 1124, 1127 (Fla. 4th DCA 1999). This argument incorrectly places the focus of the parties’ transaction upon Brighton’s obligation to compensate Knight-Ridder. The focus instead is on Knight-Ridder’s responsibility to print a newspaper advertisement that substantial *849 ly complies with what Brighton bargained for.
Second, Strategic argues that pursuant to National Constructors, Inc. v. Ellenberg, 681 So.2d 791, 793 (Fla. 3d DCA 1996), the doctrine is inapplicable where the breach of contract was willful or intentional. “In the context of contracts for construction, the doctrine of substantial performance is applicable only where the contractor has not willfully or materially breached the terms of his contract or has not intentionally failed to comply with the specifications.” Id. at 793. While Knight-Ridder intentionally reduced the size of the advertisements, it did not intentionally breach the contract. It relied on contractual language which authorized it “to revise, alter or reject any advertisement.” We agree that, although the better business practice would have been to notify its customers of the size reduction, a reduction to which Brighton obviously would have consented, we conclude that the trial court correctly granted summary judgment.
The trial court’s thoughtful and detailed fourteen page order also found that Brighton had waived any defect in KnightARid-der’s performance. Although we find the trial court’s reasoning persuasive, we need not reach this ground given our conclusion that Knight-Ridder substantially performed its contractual obligations.
Affirmed.