917 So.2d 890 (2005)
Osvaldo MARISCOTTI, Appellant,
v.
MERCO GROUP AT AKOYA, INC., Appellee.
No. 3D04-1033.
District Court of Appeal of Florida, Third District.
September 14, 2005.
Rehearing Denied January 6, 2006.
*891 Ginsberg & Schwartz and Arnold R. Ginsberg, Miami; Marc A. Kuperman, Key Biscayne, for appellant.
Gonzalo R. Dorta, Miami, for appellee.
Before COPE, C.J., and GREEN, J., and SCHWARTZ, Senior Judge.
GREEN, J.
Osvaldo Mariscotti appeals from a final summary judgment, entered in favor of Merco Group at Akoya, Inc. ("Merco"), in his tortious interference with a contract suit. We affirm.
Mariscotti contracted with New Florida Corporation, now ZPO, Inc. ("ZPO"), for the purchase of three separate luxury condominium units at a project known as the "White Diamond." These contracts provided, among other things, that ZPO had the right to cancel the contract if White Diamond's pre-sales did not go well. Specifically, the contracts provided:
W. Pre-Sales Requirements:

"I (meaning, unit buyer) understand that your mortgage lenders may require that a certain number of unit sales be made before you may close on the title to any units. You ("seller") shall have not more than 365 days from the date the first purchaser signs an agreement for sale and purchase of a unit in the Condominium to satisfy the pre-sales requirement. You will not be liable if you cannot close on my unit because of this requirement. In that event, I will receive the full refund of my deposit(s). The fact that you may cancel this Agreement does not mean that this Agreement does not become effective until after the mortgage lenders' requirements are met. This Agreement is effective when we both sign and deliver this Agreement to each other and all rights of cancellation contained in this Agreement are "condition subsequent" (conditions which do not delay the effectiveness of this Agreement).
ZPO cancelled all of its condominium agreements because it was experiencing low pre-sales, and eventually sold the undeveloped White Diamond property to Merco. In this deal, ZPO agreed: that Merco would not assume any of ZPO's pre-sale contracts or be responsible for the deposits given on the condominiums; to give Merco a two-million dollar price reduction; and instead of condominiums, Merco could develop the project as a luxury rental apartment complex. At closing, both Merco and ZPO were represented by counsel. There, ZPO informed Merco that the notices of contract cancellation and refunds had been sent to all the condominium *892 buyers, and that the escrow agent had been directed to return all deposits.
After the closing, Mariscotti filed a two count complaint against Merco alleging a claim for tortious interference with a contract and "specific performance." Mariscotti, thereafter, dropped its claim for specific performance. Following extensive discovery, Merco filed a Renewed Motion for Final Summary Judgment arguing, among other things, that it did not assume the Mariscotti contracts, and that it had been told that all existing contracts between ZPO and the condominium purchasers had been cancelled. Merco concluded that:
There was no issue left for the jury to try. What the record reflects is that [Mariscotti] has been unable to prove (sic) up its case for breach of contract.... [Mariscotti] never had enforceable contracts, and if he did the seller properly cancelled them, when the project was sold to [Merco], who at all times, was a bona fide purchaser, who paid over $25 Million dollars, based upon written notifications and representations that any existing and binding contracts were properly cancelled by the seller.
The trial court granted Merco's motion on the grounds that Merco was a bona fide purchaser of the White Diamond property as a matter of law and that it took the property free of the subject three contracts. Mariscotti appeals the final judgment. We affirm.
The tort of contractual interference occurs when: a contract exists; the third-party has knowledge of the contract; the third party intentionally interferes with a party's rights under the contract; there is no justification or privilege for the interference; and there are damages. Amer. Med. Int'l, Inc. v. Scheller, 462 So.2d 1, 8 (Fla. 4th DCA 1984); see also Cedar Hills Props. Corp. v. Eastern Fed. Corp., 575 So.2d 673, 676 (Fla. 1st DCA 1991)("In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third-party interfered with a contract by `influencing, inducing or coercing one of the parties to ... breach the contract, thereby causing injury to the other party.'") (quoting West v. Troelstrup, 367 So.2d 253, 255 (Fla. 1st DCA 1979)). If a contract between the initial buyer and seller is unenforceable, then an element of a tortious interference claim is absent. See Sullivan v. Econ. Research Props., 455 So.2d 630 (Fla. 5th DCA 1984)(where there is no contract, because requisite contractual term had not been met, plaintiff had no claim for tortious interference with contract).
It is undisputed, in the record before us, that ZPO was experiencing troubles with the pre-sale of the White Diamond condominium units. Pursuant to the terms of the agreement, Mariscotti could not hold ZPO liable for its failure to close on the condominium units if such failure was due to a lender's pre-sale requirement. ZPO as the seller, therefore, had the right to cancel its agreement, and Mariscotti agreed not to hold ZPO liable for such a cancellation. Thus, when the cancellation was duly exercised by ZPO, no actionable interference by Merco occurred as a matter of law. See McKinney-Green, Inc. v. Davis, 606 So.2d 393, 397 (Fla. 1st DCA 1992)("The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other."); Amer. Med. Int'l, Inc. v. Scheller, 462 So.2d at 8 (Fla. 4th DCA 1984)(former pathology laboratory director did not state claim for intentional interference with contract where contract provided *893 that it could be terminated by other party).
Accordingly, we find that final summary judgment in Merco's favor was proper and therefore affirm the same.
Affirmed.