DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

BIG GATES RECORDS, LLC, and ALGERNOD
LANIER WASHINGTON, a/k/a PLIES,

Appellants,

v.

BRYAN STEWART,

Appellee.

No. 2D2025-0937

_____

June 24, 2026

Appeal from the Circuit Court for Hillsborough County; Lindsay M. Alvarez and Caroline Tesche Arkin, Judges.

Nathan A. Carney of Carney Law Firm, P.A., Tampa; and Nicole Deese Newlon of Johnson, Newlon & Decort, P.A., Tampa, for Appellants.

Andrew L. Douberly of Dickinson & Gibbons, P.A., Sarasota; and Antwan Phillips of Wright, Lindsey & Jennings LLP, Little Rock, Arkansas, for Appellee.

LaROSE, Judge.

Big Gates Records, LLC (BGR), and Algernod Lanier Washington, a/k/a Plies, appeal the final judgment rendered after a jury found that they breached a contract and violated the Florida Deceptive and Unfair

Trade Practices Act (FDUTPA).  *See* §§ 501.201-.213, Fla. Stat. (2024).

We have jurisdiction.  *See* Fla. R. App. P. 9.030(b)(1)(A).  We reverse.

## Background

BGR is a Florida record company.  Plies, a Florida resident, is a rap artist.  BGR books Plies' performances.

Bryan Stewart lives in Arkansas.  He is the majority owner of Empire Management, LLC.  That entity operates Club Empire, located in Little Rock, Arkansas.

In June 2019, Mr. Stewart contracted with GoGetta, Inc., a South Carolina booking agency.  GoGetta agreed to secure Plies for a performance at Club Empire on July 27, 2019.  Neither BGR nor Plies is a party to this agreement.

Of course, GoGetta could not make Plies available without contracting with BGR.  So, GoGetta agreed with BGR that Plies would perform at Club Empire for a total of $26,250 (the Performance Agreement).[1]  Mr. Stewart and Empire Management are not parties to the Performance Agreement.

The Performance Agreement required GoGetta to make two payments of $13,125 each to BGR.  Upon executing the Performance Agreement, Empire Management made the initial payment to GoGetta.  In turn, GoGetta paid BGR.  Everything was copacetic.

That is, of course, until the second payment was due.  The Performance Agreement required that the remaining $13,125 be paid to BGR by July 25, 2019, forty-eight hours before Plies' scheduled performance.  Empire Management wire transferred $12,500 to GoGetta,

---

[1] The Performance Agreement provides that Florida law governs, and Hillsborough County is the sole venue for any dispute arising out of or relating to the agreement.

which, in turn, forwarded the money to BGR on July 26, 2019–a day late and several hundred dollars short.  Plies did not perform at Club Empire.

Mr. Stewart, who had no contractual relationship with BGR or Plies, sued BGR and Plies for breach of contract and violation of FDUTPA.  Mr. Stewart complained that he sustained "actual damages when [BGR and] Plies . . . failed to deliver the agreed-to-services."

Leading up to trial, the parties sparred over jury instructions. BGR and Plies objected to Mr. Stewart's proposed breach of contract instruction.  They complained that "[t]here is almost no such thing as substantial performance of payment between commercial parties when the duty is simply the general one to pay."  The trial court adopted Mr. Stewart's substantial performance instruction.

The trial court conducted a week-long jury trial in August 2024.  At some point, BGR and Plies moved for a directed verdict.  They challenged Mr. Stewart's status as a party.  He had paid nothing to secure Plies' appearance; all monies came from Empire Management.  And he had no contract with BGR or Plies.  Thus, BGR and Plies tell us that Empire Management was the real party in interest.  More succinctly, Mr. Stewart lacked standing to sue.  BGR and Plies also argued that Mr. Stewart's FDUTPA claim failed because he is not a Florida resident.

The trial court rejected the standing argument, explaining:

> I'm going to rule on standing.  Just some undisputed facts real quick.  Undisputed, Bryan Stewart is the owner of Empire Management.  Empire Management is a closely held corporation owned by Bryan Stewart.  Any actions performed by Empire Management were at the direction and control of Bryan Stewart.  So I – in other words, **Bryan Stewart and Empire Management are one and the same**.
>
> . . . .
>
> **But as far as standing in the sense, again, that he is one of the same with Empire Management**.

3

. . . .

    . . . **I'm finding as a matter of law, Bryan Stewart is one and the same with Empire Management.**

(Emphases added.)

On the breach of contract claim, the trial court instructed the jury as follows:

    1.    Mr. Stewart and [BGR] and/or [Plies] entered into a contract;

    2.    **Mr. Stewart did all, or substantially all, of the essential things which the contract required him to do**;

    3.    All conditions required by the contract for [BGR] and [Plies]'s performance had occurred;

    4.    [BGR] and/or [Plies] failed to do something essential which required one or both of them to do; and

    5.    Mr. Stewart was damaged by that failure.

(Emphasis added.)

The jury returned a verdict for Mr. Stewart. It awarded contract damages totaling $48,133.45 and $25,000 on the FDUTPA claim. Thereafter, the trial court denied BGR and Plies' motion for directed verdict on the FDUTPA claim.

## Discussion

### I. Mr. Stewart Lacked Standing to Assert the Contract Claim

BGR and Plies challenge the trial court's finding that Mr. Stewart had standing because he and Empire Management are "one and the same." The record belies this finding.

We review the trial court's ruling de novo. *See Fell v. Carlin*, 6 So. 3d 119, 120 (Fla. 2d DCA 2009).

The trial court should have granted BGR and Plies' motion for directed verdict. Mr. Stewart is a member, but not the sole member, of Empire Management. He did not personally pay for the performance.

4

Notably, Mr. Stewart lacked privity with BGR or Plies. If there is an aggrieved party, it might be Empire Management.[2]

As a general principle of corporate law, a corporation is a separate legal entity, distinct from its owners. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); *see also Am. States Ins. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984) ("The general rule is that corporations are legal entities separate and distinct from the persons comprising them."). Similarly, a limited liability company is an entity separate from its members. *See Palma v. S. Fla. Pulmonary & Critical Care, LLC*, 307 So. 3d 860, 866 (Fla. 3d DCA 2020) (recounting "the principle of law deeply ingrained in our legal and economic system that an LLC is an autonomous legal entity, separate and distinct from its members").

*McKinney-Green, Inc. v. Davis*, 606 So. 2d 393 (Fla. 1st DCA 1992), demonstrates why Mr. Stewart is not a suitable plaintiff. There, Davis and his brother each owned a fifty percent interest in Oaks of Kanapaha, Inc. *Id.* at 394. McKinney-Green, Inc., agreed to make a construction loan to Oaks of Kanapaha, Inc. *Id.* After McKinney-Green, Inc., failed to do so, Davis sued for breach of contract and tortious interference with a contract. *Id.* at 394–95. McKinney-Green, Inc., argued that Davis was not the proper party. *Id.* at 395. The First District agreed, holding that Davis could not bring the lawsuit as an individual stockholder. *Id.* at 395–96. The court explained that "[t]he primary injury was to Oaks of Kanapaha, Inc., for which the construction loan was intended. Thus, the

---

[2] That Empire Management is an aggrieved party is far from clear. Empire Management, too, was not a party to the Performance Agreement.

5

allegations [we]re insufficient to support . . . [a breach of contract] action by Davis." *Id.* at 396.

The same holds true here. An LLC, even if composed of a single member, is separate and distinct from the individual member.[3] *See, e.g.*, *BankAtlantic v. Est. of Glatzer*, 61 So. 3d 1222, 1223 (Fla. 3d DCA 2011).

At trial, the parties disputed whether Mr. Stewart's lack of privity with BGR and Plies unraveled his contract claim. Recall, BGR and Plies were not parties to the contract between Mr. Stewart and GoGetta. BGR and Plies entered into the Performance Agreement with GoGetta. Mr. Stewart was a stranger to that agreement.

Brushing off these obvious shortcomings, the trial court found that Mr. Stewart was a third-party beneficiary of the Performance Agreement. We disagree.

To show a breach of a third-party beneficiary contract, the aggrieved party must establish the following: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 194–95 (Fla. 2006) (quoting *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006)). Our record shows nothing clearly expressing BGR or GoGetta's intent to benefit Mr. Stewart. *See, e.g.*, *McKinney-Green, Inc.*, 606 So. 2d at 396 ("Although Davis' being a 50 per cent [sic] stockholder in Oaks of Kanapaha, Inc., may make him an incidental or consequential third-party beneficiary, . . . the right of a third-party beneficiary of a contract to sue for its

---

[3] Mr. Stewart is the majority owner of Empire Management.

6

enforcement is limited to those situations 'where the contract provisions clearly establish the parties' intent to create a right primarily and directly benefiting the third party.' . . . A merely incidental or consequential third-party beneficiary of a contract may not sue for its enforcement." (quoting *Legare v. Music & Worth Constr. Co.*, 486 So. 2d 1359, 1362 (Fla. 1st DCA 1986))); *see also Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 400–01 (Fla. 2d DCA 2000) (holding that homeowners' association was not intended third-party beneficiary of legal representation and thus, association could not bring negligence and breach of contract action against attorney, where the declaration of covenants, conditions, and restrictions for residential community reflected that legal representation and documents drafted by attorney were for benefit of record owners of fee simple title to lot, and the association did not belong to that class).

We do not quibble that as operator of Club Empire, Empire Management sought to benefit from Plies' performance. Equally possible, as the majority owner of Empire Management, Mr. Stewart might likely have reaped incidental financial benefit from Plies' performance. But these facts fall short of making Mr. Stewart an intended beneficiary of the Performance Agreement. *See, e.g.*, *Helmick v. Taylor*, 386 So. 3d 243, 246 (Fla. 2d DCA 2024) ("[T]he intent behind these undisputedly unambiguous provisions of the MSA was to memorialize who would pay which creditor, not to primarily and directly benefit any creditor as a third-party beneficiary."); *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006) ("This contract creates no express rights for the homeowners vis-a-vis Greenacre Properties. While the homeowners may incidentally benefit from the record-keeping efforts of Greenacre Properties, it cannot be disputed that Greenacre Properties is performing

7

that function primarily for the Association to assure that the Association fulfills its legal obligations under chapter 720.").

Mr. Stewart lacked standing to assert the contract claim. The trial court should have granted BGR and Plies' directed verdict motion.

## II. Substantial Performance Jury Instruction

The trial court also erred when it told the jury that Mr. Stewart only needed to prove that he substantially performed the contract as to the payment terms.

The Performance Agreement called for a $13,125 payment upon execution of the agreement. A second equal payment was due by July 25, 2019. BGR timely received the first payment. Not so for the second payment.

The problem with the challenged jury instruction is that the jury could find for Mr. Stewart even if he failed to fully comply with the payment terms. All he had to do was show that he "did all, or substantially all, of the essential things which the contract required him to do."

In context, the substantial performance instruction is wrong. Substantial performance applies only when the variance from the contract terms "is inadvertent or unintentional and unimportant so that the work actually performed is substantially what was called for in the contract." *Lockhart v. Worsham*, 508 So. 2d 411, 412 (Fla. 1st DCA 1987). However, when one party agrees to pay the other on or before a specific date, time is of the essence, and the payor is required to pay the payee on or before that date. *See Enriquillo Exp. & Imp., Inc. v. M.B.R. Indus.*, 733 So. 2d 1124, 1126–27 (Fla. 4th DCA 1999). "There is almost always no such thing as 'substantial performance' of payment between commercial parties when the duty is simply the general one to pay.

8

Payment is either made in the amount and on the date due, or it is not." *Hufcor/Gulfstream, Inc. v. Homestead Concrete & Drainage, Inc.*, 831 So. 2d 767, 769 (Fla. 4th DCA 2002) (quoting *Enriquillo Exp. & Imp., Inc.*, 733 So. 2d at 1127).

The July 25, 2019, payment was late and short by some $625. There could be no substantial performance of the agreement.

## III.  FDUTPA Award

BGR and Plies argue that the trial court erred when it denied their directed verdict motion on the FDUTPA claim.  They tell us that Mr. Stewart is an Arkansan and that the $25,000 FDUTPA damages award is duplicative of the contract damages.[4]

As noted earlier, Florida law governs the Performance Agreement. Florida law reflects that FDUTPA relief is only available to Florida residents when the alleged FDUTPA violation occurs in Florida.  The event triggering the FDUTPA claim is Plies' failure to perform in Arkansas.  *Cf. Blackhawk Quarry Co. of Fla. v. Hewitt Contracting Co.*, 931 So. 2d 197, 199–200 (Fla. 5th DCA 2006).  We have previously stated that "only in-state consumers can pursue a valid claim under . . . [FDUTPA]."  *Océ Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. 2d DCA 2000) (quoting approvingly the court's explanation in *Coastal Physician Services of Broward County v. Ortiz*, 764 So. 2d 7, 8 (Fla. 4th DCA 1999), that "[o]ther states can protect their own residents" in class actions based on debt collection activity by a Florida physician's office, thereby limiting discovery to debt collection materials only sent to in-state consumers).  *But see Millennium Commc'ns &*

---

[4] For the reasons stated above as to standing, we remain hard-pressed to say that Mr. Stewart was the party who actually suffered damages on the FDUTPA claim.

*Fulfillment, Inc v. Off. of the Att'y Gen., Dep't of Legal Affs.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (explaining that a FDUTPA claim could be based on communications to out-of-state consumers "where the allegations . . . reflect that the offending conduct occurred entirely within this state"); *Bank of Am., N.A. v. Zaskey*, No. 9:15-cv-81325, 2016 WL 2897410, at *9 (S.D. Fla. May 18, 2016). Consequently, Mr. Stewart cannot pursue a FDUTPA claim in Florida.

Further, the record supports the additional argument that the FDUTPA award is duplicative. Plaintiffs must prove and may recover only actual damages under FDUTPA. *See Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824–25 (Fla. 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim. The statute does not allow the recovery of other damages, such as consequential damages." (citation omitted)).

The jury returned a $48,133.45 verdict on the contract claim. Based on the trial evidence, this sum included the $25,625 payments Empire Management made to GoGetta, the $4,000 Empire Management paid to promoters, the $10,200 paid for the ticket refunds, the cost of hard copy tickets at $108.45, radio advertisements totaling $8,000, and $200 for Facebook advertisements.

But the jury awarded Mr. Stewart $25,000 on the FDUTPA claim. We fail to understand how the jury reached this number, especially considering that any aggrieved party would have been made whole by the damages awarded for the contract claim.

Based upon our careful review of this complicated and convoluted case and its record, we see no evidence supporting the FDUTPA award.

## Conclusion

We reverse the final judgment rendered in favor of Mr. Stewart.

10

Reversed and remanded.

LUCAS, C.J., and LABRIT, J., Concur.

_____

Opinion subject to revision prior to official publication.