899 So.2d 1222 (2005)
SHANDS TEACHING HOSPITAL AND CLINICS, INCORPORATED, Appellant,
v.
BEECH STREET CORPORATION and Unisys Corporation, Appellees.
No. 1D04-0290.
District Court of Appeal of Florida, First District.
April 20, 2005.
*1223 Joel W. Walters, Esquire of Walters, Levine, Brown, Klingensmith & Thomison, P.A., Sarasota, for Appellant.
Jerome W. Hoffman, Esquire and Susan L. Kelsey, Esquire of Holland & Knight, LLP, Tallahassee, for Appellee Beech Street Corporation and David K. Miller, Esquire of Broad and Cassel, Tallahassee, for Appellee Unisys Corporation.
BENTON, J.
Shands Teaching Hospital and Clinics, Inc. (Shands) appeals the dismissal as to Unisys Corporation (Unisys) of its second supplemental and amended complaint, which alleges that Unisys failed to make adequate payment for medical services Shands had provided persons insured by the State of Florida; that Unisys was unjustly enriched to the extent of the inadequacy; and that Unisys tortiously interfered with the contractual business relationship Shands had enjoyed with Beech Street Corporation (Beech Street).[1] We have jurisdiction. See Fla. R.App. P. 9.110(k) (2005) ("If a partial final judgment totally disposes of an entire case as to any party, it must be appealed within 30 days of rendition.").
As to Unisys, we affirm the trial court's dismissal of Shands's first three counts; reverse the dismissal of the remaining counts; remand for further proceedings on the unjust enrichment and tortious interference claims; and vacate the partial final judgment in favor of Unisys in every other respect.

I.
Initially, when Shands filed against Unisys and Beech Street in federal district court, the United States District Court for the Northern District of Florida dismissed on Eleventh Amendment grounds, holding Unisys and Beech Street immune from suit. See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp. and Unisys Corp., No. GCA98cv87 MMP (N.D.Fla. Jan. 5, 1999) (unpublished order). Beech Street is a managed care company that negotiated preferential rates with a network of health care service providers, including Shands, but, unlike Unisys, did not contract directly with the State. Shands appealed the Northern District's dismissal, *1224 and the Eleventh Circuit affirmed. See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp. and Unisys Corp., 208 F.3d 1308 (11th Cir.2000).
Shands then filed against Unisys and Beech Street in state circuit court. In these proceedings, the Circuit Court for the Eighth Judicial Circuit granted both defendants final summary judgment on the theory that, Shands's claims having been (the circuit court erroneously concluded) adjudicated in federal court on their merits, the claims were, on that account, also barred in state court. See generally England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). On appeal, we reversed, holding that "[b]ecause the federal decisions were based on Eleventh Amendment immunity, Shands was not precluded from filing the action in state court." See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp. and Unisys Corp., 820 So.2d 979, 979 (Fla. 1st DCA 2002).
Proceedings on remand from our initial decision led to the second supplemental and amended complaint (the complaint), which the trial court dismissed as to Unisys,[2] giving rise to the present appeal. We now review the propriety of that dismissal.
For purposes of ruling on the motion to dismiss, the trial court was obliged to treat as true all of the amended complaint's well-pleaded allegations, including those that incorporate attachments, and to look no further than the amended complaint and its attachments. See Brewer v. Clerk of the Circuit Court, 720 So.2d 602, 603 (Fla. 1st DCA 1998); Sarkis [v. Pafford Oil Co.], 697 So.2d [524,] 526 [Fla. 1st DCA 1997]; Varnes v. Dawkins, 624 So.2d 349, 350 (Fla. 1st DCA 1993). "A reviewing court operates under the same constraints. See Rittman [v. Allstate Ins. Co.], 727 So.2d [391,] 393 [Fla. 1st DCA 1999]; McKinney-Green, Inc. v. Davis, 606 So.2d 393, 394 (Fla. 1st DCA 1992)." Andrews [v. Fla. Parole Comm'n], 768 So.2d [1257,] 1260 [Fla. 1st DCA 2000].
City of Gainesville v. State, Dep't of Transp., 778 So.2d 519, 522 (Fla. 1st DCA 2001). The factual recitation that follows reflects the rule that Shands's well-pleaded allegations must be assumed true at this stage of the proceedings.

II.
By providing specialized hospital care ever since Shands and Beech Street entered into a Hospital Provider Agreement (HPA), Shands has played a key role in the Beech Street preferred provider organization (PPO). The HPA specifies the terms under which Shands agreed to participate in the Beech Street PPO network and to offer reduced rates to third parties contracting with Beech Street.[3] In entering into the HPA, Beech Street warranted that any payor agreement, i.e., any agreement *1225 between Beech Street and a third party for access to Beech Street's PPO network, would obligate the third-party payor to pay Shands in a timely manner in accordance with the terms of the HPA;[4] and that Beech Street would perform the utilization review for all covered services itself.[5] The HPA forbids modification except by subsequent writing,[6] and also provides that Beech Street cannot assign its rights, duties or obligations under the HPA to a third party without the written consent of Shands.[7]
The HPA had been in place between Shands and Beech Street for some six years when the State of Florida first contracted with Unisys. Before Unisys, Blue Cross and Blue Shield of Florida, Inc., had served as third-party administrator of the Florida State Group Health Insurance Program (the Program). Established for the benefit of state officers, employees, retirees and their eligible dependents, in accordance with section 110.123, Florida Statutes, the Program is funded by annual appropriations from the Legislature and premium payments by enrollees. Unisys took over as third-party administrator in 1995. See generally Shands Teaching Hosp. & Clinics, Inc., 208 F.3d at 1309-10.
When the State contracted with Unisys for third-party administration services, it also contracted with Unisys for a preferred provider network, utilization review, and case management services. See Blue *1226 Cross & Blue Shield of Fla. v. Agency for Healthcare Admin., Fla. Admin. Order No. 95-3635BID (Oct. 18, 1995) (on file with Clerk, Div. of Admin. Hearings) (finding that proposed award was not fraudulent, dishonest, arbitrary, or illegal). The parties refer to this contract between Unisys and the State (both as originally entered into and as renewed) as the "Prime Contract," and we adopt their nomenclature.
Under the Prime Contract, Unisys was responsible for employee enrollment, premium collection, payment of health care providers for healthcare services, and other administrative functions as third-party administrator of the Program. Under the Prime Contract, Unisys was also responsible for making PPO services available to those covered by the Program. To fulfill the PPO component of the Prime Contract, Unisys subcontracted with Beech Street.
Unisys's offer to subcontract with Beech Street was an integral part of Unisys's proposal to the State, and Unisys relied on its subcontract with Beech Street to perform the resulting Prime Contract. In its response to the State's request for proposals, Unisys had included a document entitled "Sample PPO Agreement," which Unisys had represented to the State as the form Beech Street used in contracting with network providers. Although Unisys knew that Shands would be one of the largest providers of services to Program beneficiaries, it did not inform the State that the terms of the Shands-Beech Street HPA differed materially from the terms of the "Sample PPO Agreement."
Under Unisys's subcontract with Beech Street, Shands became a covered hospital for State enrollees in the Program, and Unisys became a payor, by virtue of the preexisting HPA between Shands and Beech Street. Despite clear provisions on payment rates and procedures in the HPA, the subcontract between Unisys and Beech Street contained no requirement that Unisys make payment to Shands in accordance with the terms of the HPA, or even in a timely manner. The subcontract's failure to require payment as contemplated by the HPA, Shands alleges, constituted a breach of the HPA.
Beech Street was obligated to Shands under the HPA to perform all utilization review itself (unless Shands agreed otherwise in writing). Shands was obligated under the HPA to accept discounted payment for services "except with respect to such claims as to which [Shands] has not received payment within thirty (30) days after the date the claim is approved in writing by Beech Street." Again breaching the HPA, Shands alleges, Beech Street assigned its claims processing and utilization review responsibilities to Unisys without Shands's written consent, and Unisys agreed to assume these responsibilities, despite having a copy of, and knowing the specific terms of, the Shands-Beech Street HPA.
Before Beech Street and Unisys altered the procedures prescribed by the HPA, Shands submitted claim forms directly to Beech Street, and payors (such as Unisys later became) paid Shands, once Beech Street notified them it had approved Shands's claims.[8] After Beech Street required that claims go directly to Unisys for approval and payment (purportedly absolving itself of any responsibility for approving Shands's claims by assigning that responsibility to Unisys instead), Unisys fell behind in making payments to Shands.
*1227 But Unisys argued that it had not and could not fail to meet the conditions of the HPA that entitle payors to make discounted payments. No matter how late a payment was made, Unisys maintained, no payment could ever be made more than "thirty (30) days after the date the claim is approved . . . by Beech Street," since Beech Street had stopped approving claims altogether, purportedly having handed off to Unisys its contractual obligation to approve claims.

III.
"Whether a complaint should be dismissed is a question of law. On appeal of a judgment granting a motion to dismiss, the standard of review is de novo." City of Gainesville, 778 So.2d at 522. We do not disturb the trial court's judgment insofar as it dismissed claims that Unisys breached any express contractual terms[9] creating duties running directly to Shands, breached any implied covenant of good faith and fair dealing Unisys owed Shands, or breached any fiduciary duty Unisys owed Shands. Shands was not a party to the Prime Contract and Unisys was not a party to the HPA. Unisys and Shands were not in privity. The trial court also rejected, however, Shands's claims against Unisys for unjust enrichment, and for tortious interference with a business relationship,[10] specifically Unisys's part in defeating Shands's contractual rights created by the HPA between Shands and Beech Street.

A.
The trial court ruled that "Shands has no basis to sue Unisys in quasi-contract for unjust enrichment." This was error. "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994) (citing Henry M. Butler Inc. v. Trizec Props. Inc., 524 So.2d 710 (Fla. 2d DCA 1988)). There is no express contract between Shands and Unisys. Compare Kovtan v. Frederiksen, 449 So.2d 1, 1 (Fla. 2d DCA 1984) (stating that no contract will be implied where an express contract exists between the parties on the same subject matter).
Shands's complaint alleged that Shands conferred a benefit on Unisys of which Unisys was well aware; that Unisys voluntarily accepted and retained, indeed, depended upon, the benefit conferred; and that it would be inequitable for Unisys to retain the benefit conferred without paying Shands its just value. Specifically, Shands alleged that Unisys was aware of the terms of the Shands-Beech Street HPA; that those terms conditioned Shands's obligation to give discounts on receipt of timely payments; that Unisys did not make timely payments, but did not make undiscounted payments, either; and that, despite the underpayments, Unisys continued to reap the full benefit of Shands's services, which enabled Unisys to avoid *1228 breaching the Prime Contract (and incurring liability for penalties); so that Unisys was unjustly enriched by the value of services Shands provided (in excess of the discounted rates at which Shands was paid, when paid at all) to the extent they resulted in economic benefit conferred on Unisys under the Prime Contract.
Unisys argues that "Shands cannot show an unjust enrichment, because its services to the State employees in exchange for State Plan benefits did nothing at all to enrich Unisys." But this is a factual question not appropriately resolved on a motion to dismiss. See Wainer, 636 So.2d at 578 ("Complaints should not be dismissed for failure to state a cause of action unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim."). Here, as in Wainer, "speaking purely from a pleading standpoint and without considering what defenses might be pleaded in response to this claim or what the ultimate merits are, we think it sufficiently stated a cause of action for unjust enrichment so as to make a dismissal on pleading grounds error." 636 So.2d at 578. Because it cannot be said that Shands can prove no set of facts that would support its claim that Unisys was unjustly enriched at Shands's expense, the trial court erred in dismissing Shands's claim against Unisys for unjust enrichment.

B.
"In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by `influencing, inducing or coercing one of the parties . . . to breach the contract, thereby causing injury to the other party.'" Abruzzo v. Haller, 603 So.2d 1338, 1339-40 (Fla. 1st DCA 1992) (quoting Cedar Hills Props. Corp. v. Eastern Fed. Corp., 575 So.2d 673, 676 (Fla. 1st DCA 1991)). The "tort of interference with a contractual relationship . . . can . . . include attempts to alter or change only a single contractual provision . . . , whether the attempt is to extinguish the provision entirely or instead simply to alter it, so long as the effect is to interfere with benefits otherwise due the plaintiff." Ingalsbe v. Stewart Agency, Inc., 869 So.2d 30, 33-34 (Fla. 4th DCA 2004).
Invoking the economic loss rule, the trial court dismissed Shands's claim for tortious interference with the HPA, and with the entire business relationship between Beech Street and Shands. But the trial court did not have the benefit of the supreme court's subsequent, clarifying opinion in Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532, 534 (Fla.2004) (limiting the economic loss rule to situations "where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies").
The trial court erred in dismissing Shands's claim that Unisys tortiously interfered with the HPA and the relationship between Shands and Beech Street.
The Florida Supreme Court has said that the elements of tortious interference with a business relationship are:
(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

Tamiami Trail Tours, Inc., 463 So.2d [1126,] 1127 [Fla.1985]; see also Restatement *1229 (Second) of Torts § 766 (1979).
Ellis Rubin, P.A. v. Alarcon, 892 So.2d 501, 503 (Fla. 3d DCA 2004). The second supplemental and amended complaint pleaded each of these elements.
Concurring in the American Aviation case, Justice Cantero noted that the supreme court had "never applied the economic loss rule to a case involving both the provision of services and lack of privity." 891 So.2d at 544 (Cantero, J., concurring). In the present case, however, a case which does involve "both the provision of services and lack of privity," the trial court ruled:
Shands cannot seek more by a tort claim than its contract payment right, under the statute and the common law economic loss rule. Unisys as the State's agent is not personally liable in tort for payment different than that which the State agreed to make and Shands agreed to accept in contract.
The trial court's analysis overlooks the fact that Shands and Unisys are not in privity. See id. at 545 (Cantero, J., concurring) ("It is doubtful . . . that parties can protect their economic interests through contract when they have not contracted with each other and when the basis of their indirect relationship is not a tangible product, but rather an intangible service.").
The measure or amount of damages is not at issue at this point in the proceedings. See Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972) ("It is well established in Florida that where the allegations of a complaint show the invasion of a legal right, the plaintiff on the basis thereof may recover at least nominal damages, and a motion to dismiss should be overruled.") (citing Augustine v. S. Bell Tel. & Tel. Co., 91 So.2d 320, 323 (Fla.1956)); Williams v. Bay Hosp., Inc., 471 So.2d 626, 630 (Fla. 1st DCA 1985) (holding that the remedy to avoid claims for impermissible elements of damage is a motion to strike the damage claim, or an objection at trial to the damage claim, but not dismissal of the complaint); Williams v. Legree, 206 So.2d 13, 15 (Fla. 2d DCA 1968) ("[A] complaint which sufficiently states a cause of action is not rendered vulnerable to a motion to dismiss by its allegation of an improper element of damages."). Section 215.422, Florida Statutes, which governs the processing of state warrants, vouchers and invoices, has no bearing at this juncture, if at all.
Shands alleged that an ongoing business relationship between Shands and Beech Street was in existence while the HPA was in force; that Unisys had knowledge of the business relationship between Shands and Beech Street and of the specific terms of the HPA; that Unisys intentionally and without justification interfered with Beech Street's and Shands's relationship, in inducing Beech Street to breach the HPA by letting Unisys process and approve Shands's claims for payment; that, but for Unisys's interference, Beech Street would likely have discharged its contractual obligations under the HPA (based on Beech Street's claims processing history and payment services, which had been timely in the past); and that, as a direct and proximate result of Unisys's interference, Shands incurred damages.
The trial court misconceived Shands's theory on the tortious interference claim. Shands alleged that Unisys originally acted, not as the State's agent in accordance with the Prime Contract, but tortiously in order to gain the Prime Contract. See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla.1996) ("The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even [when] there exists a breach of contract action. . . . Fraudulent inducement is an *1230 independent tort."). Thereafter, Shands alleged, Unisys's dealings with Beech Street and its underpayment for Shands's services both breached the Prime Contract with the State and caused the HPA to be breached. The complaint alleges that Unisys acted, not as the State's agent or in the State's interest in these matters, but in its own.

IV.
We affirm in part; reverse insofar as the trial court dismissed the counts alleging that Unisys was unjustly enriched at Shands's expense, and tortiously interfered with the HPA; remand for further proceedings on those claims; and, in every other respect, vacate the partial final judgment in favor of Unisys.
ALLEN and DAVIS, JJ., concur.
NOTES
[1] In five counts, Shands pleaded: 1) breach of the "Prime Contract" between Unisys and the State, and that Shands is a third-party beneficiary of the "Prime Contract"; 2) breach of an implied covenant of good faith and fair dealing, allegedly running to Shands as a third-party beneficiary of an agreement between Unisys and Beech Street Corporation; 3) breach of fiduciary duty; 4) unjust enrichment; and 5) tortious interference with an advantageous, contractual business relationship.
[2] On remand, both Beech Street and Unisys filed motions to dismiss. While dismissing all counts against Unisys, the trial court denied Beech Street's motion to dismiss in its entirety.

The four counts that remain pending against Beech Street in the trial court are not affected by this appeal. Shands's claims against Beech Street include: 1) breach of the Hospital Provider Agreement, 2) breach of an implied covenant of good faith and fair dealing, 3) breach of fiduciary duty, and 4) fraud.
[3] The HPA states its purpose as:

Beech Street operates a Preferred Provider Network and has entered into, or intends to enter into, agreements with Payors (as defined below); and. . . . [Shands] Hospital desires to participate in Beech Street's Preferred Provider Network and to make its facilities and services available to Beneficiaries. . . , subject to the terms and conditions hereof[.]
[4] The HPA provides:

4.01 Hospital agrees to submit initial claims to Beech Street. . . .
4.02 The Payor Agreements shall require payor to pay claims of Hospital for Covered Services provided to Beneficiaries in a timely manner in accordance with the terms of this Agreement. . . .
4.03 So long as this Agreement remains in effect, Hospital agrees to accept the following amount (hereinafter referred to as the "Reimbursement Amount") as payment in full for Covered Services rendered or provided . . . .
. . . .
For purposes of this Agreement, the phrase "Courtesy Adjustment" means a discount in the amount set forth in Exhibit A which is applied in determining the Reimbursement Amount as set forth above for all claims for Covered Services rendered to Beneficiaries under this Agreement (including but not limited to Covered Services rendered on either an inpatient or outpatient basis), except with respect to such claims as to which the Hospital has not received payment within thirty (30) days after the date the claim is approved in writing by Beech Street. . . .
4.04 Beech Street will use its best efforts to ensure that its Payors make payment to Hospital on all approved claims within thirty (30) days of receipt of claim by Beech Street. If payment is not received within thirty (30) days of receipt of approved claim by Beech Street, then Payor will pay the hospital the amount of the approved claims.
Although Exhibit A was modified in 1995, the time requirements in the main agreement were never amended.
[5] Section 5.01 of the HPA states: "Beech Street's Utilization Review Program shall apply to all Covered Services rendered under this Agreement. . . ."
[6] The HPA provided:

12.03 Modifications. It is the express intention of both Beech Street and Hospital that the term[s] of this totally integrated writing shall comprise the entire Agreement between the parties and it shall not be subject to rescission, modification, or waiver except as defined in a subsequent written instrument executed by both parties hereto.
[7] With respect to possible assignments, the parties agreed in the HPA that:

12.04 Assignability. This Agreement or any duty or obligation of performance hereunder may not be assigned, in whole or in part by Hospital without the prior written consent of Beech Street. . . . Beech Street shall not assign its rights, duties or obligations under this Agreement without the express written permission of Hospital.
[8] This is the claims approval system to which sections 4.01-.04 of the HPA speaks. See supra note 4.
[9] We need not, therefore, reach Unisys's argument that related contractual provisions should be construed to require Shands to pursue administrative remedies, before filing in circuit court.
[10] As to the unjust enrichment and tortious interference claims, no contractual forum selection clause could have any application. The unjust enrichment claim proceeds on the theory that no express agreement governs, and the tortious interference claim also proceeds dehors the contracts.