924 So.2d 48 (2006)
Sultaana Lakiana Myke FREEMAN, Appellant,
v.
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Appellee.
No. 5D03-2296.
District Court of Appeal of Florida, Fifth District.
February 13, 2006.
Rehearing Denied March 29, 2006.
*50 Howard S. Marks, Kevin Scott Miller, Wendy S. Temple, of Graham, Builder, Jones, Pratt & Marks, L.L.P., Winter Park, and Randall C. Marshall, Legal Director, ACLU Foundation of Florida, Inc., Miami, for Appellant.
Charles J. Crist, Jr., Attorney General, and Jason Vail, Assistant Attorney General, Tallahassee, for Appellee.

ON MOTION FOR REHEARING
THOMPSON, J.
We grant the Appellant's motion for rehearing, withdraw our opinion of 2 September 2005, and substitute the following in lieu thereof.
Sultaana Lakiana Myke Freeman ("Freeman") timely appeals two separate orders that uphold a decision of the Florida Department of Highway Safety and Motor Vehicles ("Department") to cancel her driver's license because she refused to have her picture taken without her veil. The first order is a partial summary judgment rendered on her claims of due process, privacy, and free speech violations. The second order followed a nonjury trial on her claims that the Department violated Floridas Religious Freedom Restoration Act of 1998 ("FRFRA") by requiring that she be photographed without her veil to obtain a Florida drivers license and violated her constitutional right to free exercise of her religion.[1] Although Freeman has raised several issues on appeal, we find only two merit discussion.[2] The first concerns Freeman's allegation that requiring her to be photographed without her veil *51 violates FRFRA. The second argument is that requiring her to be photographed without a veil violates her claim of equal protection. Finding no violation of Freeman's constitutional rights, we affirm. See Warner v. City of Boca Raton, 887 So.2d 1023 (Fla.2004).

FACTS
Sultaana Freeman was born in Washington, D.C. in 1967. She was raised by Christian parents in Illinois and attended public schools and college in that state. Freeman earned a degree in music and business administration in 1989. She converted to the Islamic religion in January 1997 and changed her name from Sandra Michele Keller to Sultaana Lakiana Myke. She began regularly veiling her face in November or December 1997, based upon her study of the Qur'an[3] and Sunnah.[4] She was permitted to wear her veil for her Illinois drivers license photograph. After marrying her husband, a landscaping contractor, in October 1997, Freeman moved to Florida to live with him in Winter Park. Freeman did not seek a Florida drivers license until 21 February 2001.
Florida law mandates that Florida driver's licenses bear a "fullface" photograph of the license holder. Section 322.14(1)(a), Florida Statutes (2003), requires the Department to "issue to every applicant qualifying therefor, a driver's license as applied for, which license shall bear thereon a color photograph or digital image of the licensee." Likewise, section 322.142, entitled "Color photographic or digital imaged licenses," states:
(1) The department shall, upon receipt of the required fee, issue to each qualified applicant for an original driver's license a color photographic or digital imaged driver's license bearing a fullface photograph or digital image of the licensee. A space shall be provided upon which the licensee shall affix his or her usual signature, as required in s. 322.14, in the presence of an authorized agent of the department so as to ensure that such signature becomes a part of the license.
(Emphasis added).
When Freeman presented herself for her Florida license photograph wearing her traditional Muslim headdress that included a veil, the clerk was confused whether she should be allowed to wear the veil in the photograph. The clerk asked his bureau chief whether the woman should be photographed wearing "headgear." The clerk did not tell the supervisor that Freeman was wearing a veil. The bureau chief, without further questioning or viewing Freeman, said yes. The license was issued with the photograph of Freeman wearing the veil. The bureau chief testified that the photograph was taken with the veil in place "by mistake." Freeman presented her Illinois driver's license and her social security card as identification to obtain the license.[5]
Ten months after the license was issued and some three months after 11 September *52 2001, the Department sent Freeman a letter stating that she was to present herself for a photograph without her veil, or it would cancel her license. Freeman testified that taking a photograph without her veil "is just not an option." She firmly believes that Islam mandates that she wear the veil in situations such as this, i.e., the taking of a photograph. She contends the Department was clearly making her choose between violating her religious tenets or sacrificing her driver's license. As evidence of her commitment to veiling, Freeman introduced into evidence a brochure entitled "Why I Veil" that she had authored several years earlier. Freeman believes that photographs of the human face and animals are prohibited and does not allow photographs of faces in her home. Her daughter plays with faceless dolls and if an item from the grocery store has a face on it, Freeman blacks it out with a marker.
Both sides presented experts on the Islamic faith who testified about the necessity of wearing a veil under the Islamic faith. Dr. El Fadl testified for the Department that Islamic law accommodates exceptions to the practice of veiling because of "necessity." This includes medical necessity, identification for burial purposes, identification for purposes of receiving bequests or inheritance, and identification for the purpose of writing wills to be accepted by a judge. Dr. El Fadl also testified that the primary purpose of veiling is to avoid sexual enticement, attraction, or seduction. When considering whether there is an exception to veiling, the person must consider whether the state has made its "best efforts" to accommodate the belief, and whether the belief will endanger anyone else's safety. Further, where the Department had accommodated the belief by having a female photographer and no males present, a Muslim woman could have her license photograph taken. He pointed out that, even in Saudi Arabia, women are required to have fullface photographs for their passports and for exam taking.
Professor Saif Ul-Islam is a professor at the University of Central Florida and was qualified as an expert witness for Freeman. He testified that he has been a practicing Muslim for 27 years and has studied the Qur'an, the Sunnah, and other religious texts. He is an Imam, a local religious leader, who gives religious sermons in his community. He teaches the Qur'an, the Sunnah, and other religious texts and teaches local Muslims how to follow Muslim practices. He testified that Muslim women must veil themselves and that numerous passages in the Qur'an and the Sunnah refer to the veiling of Muslims and requires a Muslim woman to veil. He did not believe the doctrine of necessity, found in Islamic law, applied to removing the veil to take a driver's license photograph.
The trial court entered an extensive order denying Freeman the right to have her picture taken with her veil. It is from that order and the previous summary judgment that Freeman appeals.

FLORIDA'S FRFRA
We first address Freeman's claim that the Department violated the FRFRA by revoking her license and requiring her to be photographed without her veil in order to obtain a driver's license.
The FRFRA was enacted as a result of the decision by the United States Supreme Court that changed the standard for evaluating claims filed pursuant to the Free *53 Exercise Clause.[6] In Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (Smith II), the Supreme Court addressed the effect of peyote use during religious services upon the right of discharged employees to collect unemployment benefits. Two discharged employees from a private drug rehabilitation organization were fired because they ingested peyote as part of their sacramental services. They were denied unemployment compensation because it was found that they had been discharged for work-related "misconduct." They argued that the decision violated their right to the free exercise of their religion. The United States Supreme Court had requested the Oregon Supreme Court to clarify whether the ingestion of peyote was a violation of Oregon criminal law. Employment Div., Dep't of Human Resources of Oregon v. Smith, 485 U.S. 660, 108 S.Ct. 1444, 99 L.Ed.2d 753 (1988) (Smith I). The Oregon Supreme Court held that although the claim of the discharged employees was considered under the Free Exercise Clause of the United States Constitution, the Free Exercise Clause did not entitle the employees to violate state drug laws. Smith v. Employment Div., Dept. of Human Resources, 307 Or. 68, 763 P.2d 146, 148 (1988). The court held that using peyote for sacramental use did not exempt them from criminal penalties. Id. The U.S. Supreme Court in Smith II then held that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling government interest. See Church of the Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). This was a departure from its previous rulings, which held that, to balance the Free Exercise Clause against generally applicable state laws, the state had to show a compelling interest as set forth in Sherbert v. Verner, 374 U.S. 398, 407-408, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). See Hobbie v. Unemployment Appeals Comm'n, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); United States v. Lee, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).
In response to Smith II, Congress and several other states, including Florida in 1998, enacted religious freedom restoration acts to restore the compelling interest test. Thus, if Freeman can show a substantial burden of the free exercise of her religion, the state must demonstrate a compelling governmental interest and show that the law is the least restrictive means of furthering its interest.

VIOLATION OF FRFRA
Section 761.03, Florida Statutes (2003), provides:
(1) The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
(a) Is in furtherance of a compelling governmental interest; and
(b) Is the least restrictive means of furthering that compelling governmental interest.
(2) A person whose religious exercise has been burdened in violation of this *54 section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.
"Exercise of religion," as defined in FRFRA, "means an act or refusal to act that is substantially motivated by a religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief." § 761.02(3).[7]

A. SINCERITY OF RELIGIOUS BELIEF
Freeman had the burden of showing to the trial court that she was both sincere in claiming that unveiling for the photograph was against her religious beliefs and that the Department was substantially burdening her free exercise of religion. The court concluded that Freeman was "motivated by a sincerely-held religious belief to remain veiled" based upon the testimony offered by Freeman, her husband, and her expert witness. Because the trial court ruled that Freeman established her belief was sincere, no further review is required by this court on this aspect of her burden. Next, Freeman addresses the "substantial burden" portion of the FRFRA.

B. SUBSTANTIAL BURDEN
Freeman states that forcing her to comply with the photograph requirement places a substantial burden upon her exercise of her religion, contrary to the trial court's finding. Freeman argues that she does not waive her belief by allowing photographs of herself veiled with her eyes showing. Rather, the veil converts her face into a faceless image, Freeman argues. She writes:
The effect of a veil is so one does not see the face. Therefore, although Appellant's religion allows a photograph of a human wearing a veil, Appellant is not permitting photographs of the face, as the face is covered by the veil. Therefore, it was not only an error of law, but an error of logic, for the trial court to hold Appellant loses her rights because her religion allows photographs of humans wearing a veil but does not allow photographs of anything but faceless images. The veil is what keeps the image faceless.
We determine there is no substantial burden on Freeman's exercise of religion. The Florida Supreme Court in Warner, 887 So.2d at 1023 addressed the FRFRA and answered two questions certified by the Eleventh Circuit in Warner v. City of Boca Raton, 267 F.3d 1223 (11th Cir.2001). The Eleventh Circuit had decided that a city ordinance prohibiting vertical grave markers or other vertical structures on the cemetery grounds, except during a 60-day period from the day of burial and certain holidays, did not violate the plaintiffs' religious freedoms, but it had several questions about the act. In deciding the case, the Florida Supreme Court reviewed the three main definitions of substantial burden adopted at the federal level in religious freedom restoration act cases. Warner, 887 So.2d at 1033. The court considered them as narrow, middle, and broad definitions of "substantial burden." Id.
*55 The supreme court agreed with the Fourth, Ninth, and Eleventh Circuits' definitions as most consistent with FRFRA's language.[8] The court held "that a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids, or forbids him to engage in conduct that his religion requires." Id. (citation omitted).
Having decided that the narrow definition was best, the supreme court agreed with the Eleventh Circuit's conclusion in Warner. The regulation did not substantially burden the individuals' religious beliefs because the regulation did not prohibit marking graves or decorating them with religious symbols, but only restricted the placement of vertical markers. This restriction was labeled a "mere inconvenience" on the religious practice of marking graves. The supreme court confirmed what the FRFRA already made clear  that the FRFRA is broader than the United States Supreme Court precedent. While FRFRA provides broader protection, the federal constitution is the "floor" for basic freedoms and the state constitution provides the protections:
The protection afforded to the free exercise of religiously motivated activity under the FRFRA is broader than that afforded by the decisions of the United States Supreme Court for two interrelated reasons. First, the FRFRA expands the free exercise right as construed by the Supreme Court in [Smith II] because it reinstates the Court's pre-Smith holdings by applying the compelling interest test to neutral laws of general application. Second, under the FRFRA, the definition of protected "exercise of religion" subject to the compelling state interest test includes any act or refusal to act whether or not compelled by or central to a system of religious belief.

887 So.2d at 1032.
Thus, the FRFRA "protects more conduct than conduct that is central to a litigant's religious practices." Id. at 1025 n. 1. Even under the FRFRA, however, only those laws that "substantially burden" a person's exercise of religion are subject to strict scrutiny.
By adopting a narrow definition of "substantial burden" in cases interpreting the FRFRA, the supreme court states: A substantial burden on the free exercise of religion is "one that either compels the religious adherent to engage in conduct *56 that his religion forbids or forbids him to engage in conduct that his religion requires." Id. at 1033. The court acknowledged that this definition may require that courts determine whether the practice in question is obligatory or forbidden.
Having defined substantial burden, the supreme court turned to the procedure to apply in the FRFRA cases. First, the plaintiff must show that the state placed a substantial burden "on a practice motivated by a sincere religious belief." Id. at 1032 (citing Weir v. Nix, 890 F.Supp. 769, 783 (S.D.Iowa 1995)). The court noted that the FRFRA "clearly prohibits a reviewing court from conducting a factual inquiry which questions the validity or centrality of a plaintiff's beliefs." Warner, 887 So.2d at 1034 n. 10. Second, assuming the plaintiff demonstrates the sincerity of his or her religious beliefs, it must be determined "whether the government's regulation constitutes a substantial burden on the free exercise of religion." Id. at 1035. To meet this burden, the plaintiff must "prove that a governmental regulatory mechanism burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Id. (citing Graham v. Comm'r, 822 F.2d 844, 850-51 (9th Cir.1987), aff'd sub nom., Hernandez v. Comm'r, 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). Finally, if the first two steps are met, the burden shifts to the state to establish "that the regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest." § 761.03(1)(a), (b).
There was no clearly identified definition of "substantial burden" in Florida until Warner, 887 So.2d at 1023. The narrow definition of substantial burden adopted by the supreme court tempers the act's strict scrutiny requirement. A plaintiff must meet a high standard to show a substantial burden on religious freedom. However, if that standard is met, the state faces a heavy dual burden of demonstrating a compelling interest and that the regulation is the least restrictive means to meet that interest. Because the supreme court in Warner held that the regulation on vertical grave markers did not substantially burden the plaintiffs' free exercise of religion, it never reached the compelling interest/least restrictive means analysis.
In this case, the trial court concluded that Freeman had not shown that the photo requirement substantially burdened her free exercise of religion. This conclusion is supported by expert testimony of Dr. Kahaled Abou El Fadl.[9] Dr. El Fadl testified that in Islamic countries there are exceptions to the practice of veiling. Consistent with Islamic law, women are required to unveil for medical needs and for certain photo ID cards. Examples include photo ID cards to be displayed to police, to enter and take professional exams, and for passports. The only qualification is that the taking of the photograph accommodate Freeman's beliefs. Here, the Department's existing procedure would accommodate Freeman's veiling beliefs by using a female photographer with no other person present. Thus, the burden to accommodate Freeman's religious beliefs would be placed upon the Department. As in Warner, *57 the trial court here concluded that Freeman had failed to demonstrate a substantial burden, and thus, the court did not reach the compelling interest/least restrictive means test.
Under the newly-adopted narrow definition of substantial burden, we affirm the trial court's conclusion because it does not compel Freeman to engage in conduct that her religion forbids  her religion does not forbid all photographs. Her veiling practice is "merely inconvenienc[ed]" by the photograph requirement. Because she failed to demonstrate a substantial burden, one of the prongs of Warner, we need not discuss whether the substantial burden is outweighed by a compelling governmental interest by the least restrictive means.

EQUAL PROTECTION
Freeman also argued that requiring her to take a fullface photograph treated her differently than others who were not required to be photographed when they applied for and were issued temporary driving permits. In making her equal protection claim below, Freeman argued that the Department treated similarly situated people differently because it had issued 800,000 photoless permits in the prior five years and had allowed persons to wear beards, wigs, cosmetics, and glasses when their photographs were taken, yet it had refused to grant her a license without a photograph. At the close of Freeman's case, the trial court granted the Department's motion for an involuntary dismissal of Freeman's equal protection claim. The court explained that it had been persuaded by "the fact that in order to be considered for the temporary permit, the existence of a photograph on record of a permanent license had to exist, and that in the event that one of your paper, or temporary permits expired, it would not be renewed if there was not a photograph that was on record."[10]
Freeman's argument is without merit. The statute requires "fullface" photographs on permanent licenses and there was no evidence that the Department ever made any exception to that requirement for anyone. None of her examples show that the Department photographed anyone with a mask or other covering over the face. Because Freeman failed to show that persons similarly situated received different treatment, the trial court properly granted the Department's motion to dismiss the equal protection claim.
We recognize the tension created as a result of choosing between following the dictates of one's religion and the mandates of secular law. However, as long as the laws are neutral and generally applicable to the citizenry, they must be obeyed. In Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), the court wrote: "[W]e are a cosmopolitan nation made up of people of almost every conceivable religious preference.... Consequently, it cannot be expected, much less required, that legislators enact no law regulating conduct that may in some way result in ... disadvantage to some religious sects...." Id. at 606, 81 S.Ct. 1144. We affirm the orders entered by the trial court.
AFFIRMED.
PALMER and ORFINGER, JJ., concur.
NOTES
[1] After Freeman filed her driver's license suit, she filed identical claims challenging the Department's refusal to issue her a state identification card without a photograph. The two cases were consolidated below.
[2] Appellee filed a suggestion of mootness because of recent legislation which exempts the requirement for a fullface photograph from chapter 761, FRFRA. In House Bill 1697, Chapter 2005-164, Laws of Florida, sections 69 and 76, the legislature exempted the requirement for a fullface photograph on state identification cards from FRFRA by amending section 322.051, Florida Statutes, and state driver's licenses by amending section 322.142, Florida Statutes. The pertinent language in each section is identical and reads: "Notwithstanding chapter 761 or s. 761.05, the requirement for a fullface photograph or digital image of the identification card holder [or licensee] may not be waived." The bill was signed by the governor on 8 June 2005 and became law on 1 July 2005. We issue this opinion because issues of retroactivity and damages have not been resolved. See Promontory Enters., Inc. v. S. Eng'g & Contracting, Inc., 864 So.2d 479, 483 (Fla. 5th DCA 2004) and Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp., 899 So.2d 1222 (Fla. 1st DCA 2005).
[3] The Qur'an, also written as Koran, is the sacred book of Islam, believed by Muslims to be the word of Allah as revealed in Arabic to the prophet Muhammad, and arranged after his death.
[4] The Sunnah "is the traditions, the way, the rules of Prophet Mohammed, peace and blessings be upon him, and these are collected in Hadeeth, which means narrations and they are in volumes and volumes of books." The Qur'an and the Sunnah are read together, and a reader must refer to the Sunnah for expanded explanation and details.
[5] Florida does not require any of the permissible forms of identification for obtaining a driver's license to bear a photograph of the applicant.
[6] U.S. CONST., amend. I.
[7] Article 1, section 3 of the Florida Constitution provides:

There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
[8] Other courts have considered the definition of "substantial burden" in analogous cases involving the Religious Land Use and Institutionalized Persons Act of 2000, see 42 U.S.C. § 2000cc et seq., and have agreed that "substantial burden" requires more than a merely incidental effect on religious exercise. In Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir.2004), the court stated that:

[A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.
Midrash Sephardi involved synagogues contesting zoning requirements that excluded churches and synagogues from meeting in seven of the city's eight zoning districts.
In Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir.2003), the court, defining substantial burden in the context of religious exercise in a land-use case, stated that "a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise  including the use of real property for the purpose thereof within the regulated jurisdiction generally  effectively impracticable."
[9] Dr. El Fadl is an American-educated law professor who also holds a Ph.D. and Masters degree in Islamic law. He was educated in Islamic religious schools in Egypt and Kuwait. He is a widely published author of texts and commentaries on Islamic law, including the rules related to veiling.
[10] The Florida Administrative Code lists numerous situations in which a temporary driving permit may issue. These licenses can be issued from 7 to 90 days. See e.g., Florida Administrative Code 15A-1.024(3), 15A-6.005, 15A-1.0297. As applied in this case, Freeman wants a permanent license, not a temporary license.